[Civ. No. 33524. Second Dist., Div. Five. Feb. 3, 1970.]

WILLARD RANDLES et al., Plaintiffs and Appellants, v.
HARRY LOWRY, Defendant and Respondent.

**COUNSEL**

Robert J. Herman for Plaintiffs and Appellants.

Barnes, Benton, Orr, Duval & Buckingham and Edwin Duval for Defendant and Respondent.

**OPINION**

**STEPHENS, J.**—The plaintiffs are Willard and Linda Randles and their minor son Jeffery, by Linda Randles, his guardian ad litem. Each appeals from the judgments entered after three jury verdicts: one in favor of Linda; one in favor of Jeffery; and one against Willard. The action arose out of a traffic accident in which defendant's truck collided with the rear end of plaintiff Willard Randles' station wagon. Plaintiffs Linda and Jeffery Randles were passengers in the station wagon. Willard sought recovery for the damage to his station wagon and the costs of a rental vehicle while the station wagon was being repaired. Linda and Jeffery sought general and special damages for their personal injuries. Defendant's answer denied negligence and alleged the contributory negligence of all plaintiffs.

On April 18, 1967, defendant made a statutory offer to compromise by permitting plaintiffs to take judgment against him for the sum of $2,300, each of the parties to bear their own costs. The offer to compromise did not designate the amount offered to each plaintiff and none of them accepted. Trial of the action before a jury commenced on April 25, 1967, but on the third day of trial the court granted defendant's motion for a mistrial.

The trial again commenced on July 5, 1967. On July 14, 1967, the jury returned three verdicts: a verdict against defendant and in favor of Linda Randles for $1,840.49; a verdict against defendant and in favor of Jeffery Randles for $40.50; and a verdict in favor of defendant against Willard Randles. Judgment was entered accordingly. Cost bills were filed by the respective parties, plaintiffs claiming items totalling $889.86 and defendant claiming items totalling $1,139.02. Plaintiffs' motions for a new trial and

for judgment notwithstanding the verdict were denied. Defendant's motion to strike plaintiffs' cost bill was denied and the court taxed costs in favor of plaintiff Linda Randles in the sum of $98.40. The plaintiffs' motion to strike defendant's memorandum of costs was granted and the court allowed defendant 10 days to file an amended cost bill.

This appeal is on the clerk's transcript and a settled statement of facts, in lieu of a reporter's transcript.

On the day that plaintiffs' motions for a new trial, for judgment notwithstanding the verdict, and to tax costs came on for hearing, the court entered the following minute order:

"A group of documents including three forms of verdicts, one signed by foreman of the jury, not returned, two unsigned, are ordered filed to be considered as a part of Plaintiff's motion herein."

The "verdict" signed by the foreman provided as follows:

"We, the jury, empaneled to try the above entitled action, find in favor of the plaintiff, WILLARD RANDLES, and against the defendant, HARRY LOWRY, and fix plaintiff's damages in the sum of $ ---0--- ."

One contention on appeal is that "The Jury was confused." A portion of the argument directed to the quoted contention relates to a claimed irregularity in the jury verdict returned as to Willard Randles. We are without adequate record to determine just how the "verdict" heretofore set forth, and ordered filed, came to the judge's attention. We do know, however, that the *true verdicts* were returned in open court. The clerk's transcript establishes that

"Upon request of respective counsel the jury is possed [*sic*] as to verdicts rendered, and each juror replied upon roll call that said verdict was, was not, his or her verdict, to-wit: as to Verdict No. 1, ten (10) yes, two (2) no: as to Verdict No. 2, twelve (12) yes, none no: as to Verdict No. 3, ten (10) yes, two (2) no.

"The Court thereupon excuses the jurors from further attendance upon the Court."

The verdict returned is clearly that which the jury intended, and no error, as contended, exists.

Pursuant to the settled statement, the following facts were stipulated: A truck driven by defendant collided with the rear of a station wagon owned and driven by plaintiff Willard Randles. Plaintiff Linda Randles, the wife of Willard Randles, and plaintiff Jeffery Randles, the Randles' minor son, then four years of age, were passengers in the station wagon.

Willard Randles testified that the cost of repair to the station wagon was $632.25; that the expense of rental of a replacement vehicle during the time that the station wagon was being repaired was $239.07; that his property damage loss was $50, the deductible portion under his policy of insurance; that Jeffery suffered two cuts, one at the back of his head and another near one of his ears. After the collision he noticed that Jeffery was bleeding from a cut on the back of his ear and was crying. Plaintiffs Willard Randles and/or Linda Randles incurred and/or paid $40.50 for examination and X-rays of Jeffery.

Plaintiff Linda Randles testified that immediately after the accident she kept screaming "Where is Jeff?" until she saw him on the floor of the station wagon. She saw that he had received one or two small cuts on his head and was bleeding from one or both of them. He was quite upset and crying.

Dr. Frederick England testified that he examined Jeffery on the day of the accident and observed that he had suffered lacerations on his scalp and behind his right ear but they were not severe. He gave Jeffery a tetanus booster shot and took X-rays of his skull. The X-rays did not reveal any bone injury or other abnormality. The lacerations did not require suturing. After examining Jeffery a day later he advised Mrs. Randles that no further treatment would be necessary.

Joseph Hansen, the California Highway Patrolman who investigated the accident, testified that at the scene of the accident he noticed that Jeffery had a cut ear and was bleeding. He did not administer first aid and could not recall the extent of the injuries.

Jeffery Randles did not testify at the trial. At the request of his counsel he walked back and forth in front of the jurors so that they could observe the area of his head which received the lacerations.

Plaintiff Willard Randles contends that he should have been granted a new trial because the jury allegedly returned a verdict in his favor, yet fixed his damages at zero. Willard relies upon the case of *Bisnett* v. *Hollis*, 207 Cal.App.2d 142 [24 Cal.Rptr. 231] to support his argument. In that case, the jury found in favor of the plaintiffs and against defendants and awarded damages "in the sum of $ None." The court held in that case that the verdict was insufficient because the jury could not have found in plaintiffs' favor without finding damages, and the trial judge should have sent the jury back for further deliberations. However, in *Bisnett*, the jury actually returned the insufficient verdict. The unreturned verdict in our case is not merely insufficient, it is a complete nullity. The jurors obviously wanted to find in favor of defendant, first used the wrong verdict form,

and then discarded it when they realized their error. The verdict that was actually returned in favor of defendant and against Willard was perfectly proper in form.

Plaintiff Jeffery Randles contends that the trial court erred in not granting his motion for additur, or, in the alternative, for a new trial. He argues that a verdict in his favor for $40.50, the exact amount of his medical specials, is inadequate as a matter of law because no general damages were awarded although the evidence showed, without contradiction, that general damages were sustained. At the outset, we note that on the basis of the facts presented in the settled statement, the jury found against plaintiff Willard Randles because it had obviously determined that he was contributorily negligent.

From the stipulated facts, we are unable to say that the jury did not determine that Willard Randles paid the medical bills for Jeffery. ■ Where the parent who has paid such special damages is held contributorily negligent, he may not recover such special damages, either personally or by way of recovery by the minor. (*Morningred* v. *Golden State Co.,* 196 Cal.App.2d 130, 138-139 [16 Cal.Rptr. 219].) The jury having found that Willard was contributorily negligent, that negligence would bar all but Jeffery's right to general damages (*Crane* v. *Smith,* 23 Cal.2d 288, 301 [144 P.2d 356]; *Zarzana* v. *Neve Drug Co.,* 180 Cal. 32, 36-37 [179 P. 203, 15 A.L.R. 401]), and the award of $40.50 could theoretically only be justfied on that basis.

■ In the instant case, the evidence shows that Jeffery's injuries consisted solely of two lacerations which did not need suturing, and only required two visits to his family doctor and a total doctor bill of $10 (plus $5.50 for St. John's Hospital report, plus X-ray charges). There is no evidence that he suffered any discomfort after the date of the accident. We cannot say, as a matter of law, that X-rays were reasonable under these circumstances. It may well be that the jury excluded the expense incurred for X-rays. In light of this evidence, we cannot say that a judgment coinciding with the amount of medical expenses was inadequate as a matter of law.

In addition, we cannot say that under the facts of the instant case a verdict awarding only special damages is inadequate as a matter of law. ■ An appellate court will not set aside a judgment for no more than actual medical expenses unless the trial court abused its discretion. (*Haskins* v. *Holmes,* 252 Cal.App.2d 580, 586 [60 Cal.Rptr. 659].) ■ If the evidence clearly indicates that plaintiff suffered serious pain, inconvenience, or mental suffering, a verdict for medical expenses alone might be inadequate as a matter of law. (*Haskins* v. *Holmes, supra*; *Buniger* v. *Buniger,*

249 Cal.App.2d 50 [57 Cal.Rptr. 1].) However, an award for the exact amount of, or even less than, the medical expenses is not necessarily inadequate if there is a conflict as to whether the plaintiff suffered any substantial injury or pain. (*Haskins* v. *Holmes, supra*; *Miller* v. *San Diego Gas & Electric Co.*, 212 Cal.App.2d 555, 558 [28 Cal.Rptr. 126].)

■ Pursuant to Code of Civil Procedure section 997,[1] the court ruled that the successful plaintiffs were not entitled to recover their costs incurred after receipt of defendant's offer of compromise because they had not received a judgment more favorable than the compromise offer. The court accordingly taxed costs in favor of Linda Randles in the sum of $98.40, the amount she had expended prior to receipt of the offer, and ruled that defendant was entitled to costs incurred after the offer was made.[2] Plaintiffs argue, and we agree, that section 997 is inapplicable because the offer of compromise was a nullity. The offer was made jointly to all plaintiffs, without designating how it should be divided between them. It is therefore impossible to say that any one plaintiff received a less favorable result than he would have under the offer of compromise. The trial court indicated that but for Code of Civil Procedure section 997, he would have awarded the prevailing plaintiffs at least a portion of their costs, pursuant to his discretionary power under Code of Civil Procedure section 1032, subdivision (d).[3]

Since section 997 is inapplicable, the judgment as it relates to the prevailing parties and the taxing of their costs is reversed with directions that the court below determine the portion of their costs to which the prevailing plaintiffs are entitled. ■ Since Willard Randles did not prevail, he is not entitled to costs.

The judgment as to Willard Randles is affirmed.

The judgments as to Linda and Jeffery Randles are affirmed except as

---

[1]At the time of trial, section 997 read as follows: "The defendant may, at any time before the trial or judgment, serve upon the plaintiff and offer to allow judgment to be taken against him for the sum or property, or to the effect therein specified. If the plaintiff accept the offer, and give notice thereof within five days, he may file the offer, with proof of notice of acceptance, and the clerk, or the judge where there is no clerk, must thereupon enter judgment accordingly. If the notice of acceptance be not given, the offer is to be deemed withdrawn, and cannot be given in evidence upon the trial; and if the plaintiff fail to obtain a more favorable judgment, he cannot recover costs, but must pay the defendant's costs from the time of the offer."

[2]See *Bennett* v. *Brown*, 212 Cal.App.2d 685 [28 Cal.Rptr. 485].

[3]Code of Civil Procedure section 1032, subdivision (d) provides: "In all actions, whether mentioned in this section or not, if the prevailing party recovers a judgment that could have been rendered in a court inferior in jurisdiction in the county or city and county, such prevailing party shall not recover costs unless the judge, who presided at the trial, or, in the event of his inability for any reason to act, some other judge of the court, in his discretion, makes an order, allowing costs or such part thereof as he deems proper."

to the taxing of costs in each instance, and as to that portion of said judgments, each is reversed and the cause remanded for determination of apportionment of costs in conformity with this opinion.

Kaus, P.J., and Reppy, J., concurred.